**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **PENLAND HEATING and** | **CASE NO.: 20-01795-5-DMW** |
| **AIR CONDITIONING, INC.** | |
| **DEBTOR** | |

## PLAN OF REORGANIZATION

Pursuant to the provisions of 11 U.S.C. § 1123, the Debtor hereby submits the following Plan of Reorganization (the "Plan"):

## I.  HISTORY AND BUSINESS STRUCTURE

On May 1, 2020 ("Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the United States Bankruptcy Code.

The Debtor is a closely held business that performs commercial HVAC installation and service.  Its principal office is in Beaufort, North Carolina and it does work across the State of North Carolina.   Prior to filing the Debtor experienced a downturn in business and took on extra debt in an effort to remain in business.  Upon filing and reviewing its financial situation, The Debtor determined that it would cease all operations.  The Debtor intends to liquidate its assets and wind-up its business.

The Debtor estimates it is owed approximately $81,000 in outstanding accounts receivable for work on jobs completed or to be completed in the next 30 days.  Hoffman & Hoffman, Inc. ("Hoffman & Hoffman") claims a lien on these funds in the amount of $15,234.42 via a claim of lien filed and served on respective general contractors on each individual job.  The Debtor estimates that $13,103.89 is held by general contractors and is subject to the claim of lien filed by Hoffman & Hoffman.  On or about July 14, 2020 the Debtor filed a Motion for Turnover directing each general contractor to turn funds over to the Debtor.  The Debtor anticipates Hoffman & Hoffman will file a response to this motion and the Court will rule on the validity of its claim of lien on funds in the hands of General Contractors.

Since the Petition Date, the Debtor has complied with the requirements of the Bankruptcy Code, orders of the Court, and the requests of the Bankruptcy Administrator's office. An intake conference with conducted by the Bankruptcy Administrator's Office on May 18, 2020.  The Section 341 meeting of creditors was held telephonically on June 2, 2020.  The Debtor does not anticipate they will need further reorganization after the confirmation of the Plan.

1

## I.  SUMMARY OF PLAN

The Plan contemplates a liquidation of the Debtor's assets.  The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor.

The Debtor urges Creditors and parties in interest to consult with counsel. Parties in interest should not rely on any representations not contained in the Plan in making a determination on voting on the Plan.  A detailed explanation of creditors voting rights is contained in the Plan.

## II.  DEFINITIONS

1.      "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under § 507(a)(1) of the Bankruptcy Code.

2.      "AGENTS" shall mean directors, officers, employees, representatives, attorneys, financial advisors, and accountants of the Debtor who have authority to act on the Debtor's behalf.

3.      "ALLOWED CLAIM" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

4.      "AVAILABLE CASH" shall mean the total cash available for distribution on the "Effective Date" (as the term is defined below).

5.      "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended.  References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. § 101, et seq.

6.      "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

7.      "BAR DATE" shall mean the date established by the Bankruptcy Court for filing Proofs of Claim in this chapter 11 case; however, if the Bankruptcy Court orders an extension of the time by which a Creditor may file a Proof of Claim, the date set with respect to such Creditor shall be the Bar Date.

8.      "CLAIM" shall mean a duly listed or a timely filed Allowed Claim which is allowed and ordered to be paid by the Court.

9.      "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

10.    "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

11.    "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1129.

12.    "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

13.    "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

14.    "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

15.    "DEBTOR" shall mean Penland Heating and Air Conditioning, Inc., the Debtor identified on the first page of this Plan.

16.    "DISBURSING AGENT" shall mean the Debtor or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

17.    "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

18.    "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under the Debtor's Plan.

19.    "ESTATE" or "BANKRUPTCY ESTATE" shall mean all legal or equitable interests of the Debtor in property, whether personally held or not, at the time of the Debtor's bankruptcy filing.

20.    "EFFECTIVE DATE" shall be that date on which the Confirmation Order becomes final and non-appealable.

21.    "FINAL DECREE" shall mean the order of this Court pursuant to FEDERAL RULE OF BANKRUPTCY PROCEDURE 3022 closing this case.

22.    "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expires; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

23.     "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

24.     "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined above).

25.     "INTEREST" shall mean any share of common stock, preferred stock, membership interest, or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or other right, contractual or otherwise, to acquire 4 any other such interest in the Debtor that exited before the Effective Date, any phantom stock or other similar stock unit provided pursuant to the Debtor's pre-petition corporate structure and any Claim related to the purchase of interests subject to subordination pursuant to 11 U.S.C. § 510(b); provided, however, that to the extent an Interest is subject to the terms of a prepetition contract or other agreement, any recovery under the Plan on account of such Interest shall be subject to the terms of such contract or agreement.

26.     "PERSON" shall mean any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental unit or political subdivision, or other agency or entity.

27.     "PETITION DATE" shall mean May 1, 2020, the date the Debtor filed its voluntary chapter 11 petition.

28.     "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

29.     "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under § 507.

30.     "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

31.     "SALE" shall mean the disposition of certain assets of the Debtor through a transfer of ownership from the Debtor to another person or entity as set forth in this Plan.

32.     "SALE PROCEEDS" mean the remaining funds of a sale of certain assets of the Debtor as set forth in this Plan, after payment of all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions and any other costs permitted under 11 U.S.C. § 506(c)).

33.     "SCHEDULES" shall mean, collectively, the Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statement of Financial Affairs filed by the Debtor pursuant to 11 U.S.C. § 521 and in substantial accordance with the Official Bankruptcy Forms.

34.     "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrance which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

35.     "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

36.     "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to 11 U.S.C. § 507(a)(8).

37.     "UNEXPIRED LEASE" shall mean a lease where the Debtor is a party that is subject to assumption or rejection under 11 U.S.C. § 365. 39. "UNIMPAIRED" means any Claim or Interest that is not designated as Impaired. 40. "UNRESOLVED CLAIM" shall mean any Claim that has neither been Allowed, Disallowed, or liquidated.

B.      Other Defined Terms. Capitalized terms not defined in this Plan shall have the meaning set forth in 11 U.S.C. § 101.

C.      Rules of Interpretation. For purposes of this Plan: (a) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" or "Sections" are references to Articles or Sections, as applicable, hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply; and (h) any immaterial effectuating provisions may be interpreted by the Debtor in a manner that is inconsistent with the overall purpose and intent of the Plan without further orders of the Court.

## III.  CLASSIFICATION AND TREATMENT OF
## CLASSES OF CLAIMS AND INTERESTS

Classification of Claims Generally. Pursuant to §§ 1122 and 1123 of the Bankruptcy Code, this Article represents the designation of Classes of Claims under the Plan. A Claim is in a particular Class for the purposes of voting on, and receiving distributions pursuant to, the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, withdrawn, or otherwise determined by a Final Order before the Effective Date. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. Any Class of Claims that is not occupied as of the date of the Confirmation Hearing of the Plan by an Allowed Claim, or a Claim temporarily Allowed under Bankruptcy Rule 3018, and for which, on the Effective Date, there are no Disputed Claims in such Class pending, shall be  deemed deleted from the Plan for all purposes.

The Debtor classifies the following classes of claims, indicating whether said Class is impaired or unimpaired, and proposes the following treatment:

**A**.    **Class 1 - Administrative Costs:**

(1)    Description of Class.  Class 1 consists of claims for any cost or expense of administration pursuant to 11 U.S.C. §§ 503, 506, and 507.  The following Claims of professionals will be paid subject to Court approval:

| Professional | Services Provided | Amount Owed |
|---|---|---|
| The Law Offices of Oliver & Cheek, PLLC | Attorney for the Debtor | To be determined by the Court |
| Williams Overman Pierce, LLP | Accountant for the Debtor | To be determined by the Court |

(2)    Impairment.    This class will be impaired.

(3)    Treatment.    Administrative Claims approved by the Court shall be paid in cash and in full including accruals to date of payment within ten (10) days from the Effective Date of the Plan or upon entry of an Order allowing such Administrative Claim, whichever is later, except that professional fees shall be paid in full upon entry of an Order allowing the same, or pursuant to any agreement between the Debtor and the holder of a Class 1 Allowed Claim. In the event that funds are not available to pay such Administrative Claims within ten (10) days of the Effective Date of the Plan, then each holder of such a claim that agrees to receive payments over time will receive payments from the Debtor until paid in full.

At the request of the holder of an Administrative Claim, such amounts will be secured by collateral to be agreed upon by the Debtor and the holder of the Administrative Claim. The Debtor shall execute a promissory note and security instrument(s) to document such transaction.

Such Claims remaining unpaid ten days following the Effective Date shall accrue interest at a rate of six percent (6%) per annum.

6

**NOTICE OF BAR DATE: All administrative claims, other than claims of a court approved professional, shall be filed no later than the first hearing date set for confirmation of the Plan. Otherwise, such claims shall be waived and shall not be asserted against the Debtor at any time.**

**B.      Class 2 – Ad Valorem Taxes:**

(1)      Description.  Class 2 consists of Claims for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtor based upon the value of the property assessed.  The Debtor is aware of the following Claim(s) in this class.

| Professional | Claim No. | Amount Owed |
|---|---|---|
| Carteret County Tax Collector | | -- |
| Orange County Tax Collector | 1 | $171.48 |

(2)      Impairment.  This class will be unimpaired.

(3)      Treatment.      The Debtor proposes to pay claims in this class through a distribution from liquidation proceeds.  Payment from liquidation proceeds will be made within the statutory period or within one hundred and twenty (120) days of the Effective Date and shall include interest at the statutory rate as of the Effective Date.

Ad valorem taxes for the current tax year may be treated as a prepetition claim and not as an administrative expense.  *See In Re St. Lawrence Homes, Inc., Case No. 09-00775-8, Order dated July 28, 2010, citing In Re Members Warehouse, Inc., 991 F.2d 116, 118-119 (4th Cir. 1993).*

**C.      Class 3 – Tax Claims:**

(1)      Description.      Class 3 consists of claims against the Debtor for income taxes, withholding taxes, unemployment taxes and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service or the North Carolina Department of Revenue plus interest as allowed by law. The Debtor is aware of the following claim(s) in this Class:

| Taxing Entity | Claim No. | Amount Owed |
|---|---|---|
| Internal Revenue Service | 6 | $93,815.49 (priority claim) |
| North Carolina Department of Revenue | 9 | $978.58 (priority claim) |

(2)      Impairment. This class will be unimpaired.

(3)      Treatment.   The Debtor proposes the following treatment:

**Costs and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date.

**Unsecured priority tax claims**, if any, described in Bankruptcy Code § 507(a)(8) shall be paid in full from the net proceeds of the liquidation of the Debtor's assets as outlined in the Liquidation section below.  Payment will be paid according to the priorities of the Bankruptcy

Code and orders of the Court. It is anticipated that such payment will be made no later than one hundred and twenty (120) days of the Effective Date and shall include interest at the statutory rate as of the Effective Date. The majority of the Claim of the Internal Revenue Service is estimated based on the unfiled quarterly 941 tax returns over a three (3) year period. The Debtor anticipates that this claim amount will be reduced upon the filing of these returns. At the time of the filing of the Plan, the Debtor is in the process of filing a motion to hire an Accountant to assist in the preparation and filing of these returns.

**Secured claimants**, if any, shall retain their secured interest in the property of the Debtor. The taxing authority shall retain its lien and secured status as to the underlying secured tax liability, plus accruing interest at the statutory rate from the Effective Date. Debtor shall pay these Claims in full from the net proceeds of the liquidation of the Debtor's assets as outlined in the Liquidation section below. Payment will be paid according to the priorities of the Bankruptcy Code and orders of the Court. It is anticipated that such payment will be made no later than one hundred and twenty (120) days of the Effective Date and shall include interest at the statutory rate as of the Effective Date.

In the event that the Debtor fails to timely make a required payment as to any claim of the North Carolina Department of Revenue (the "Department"), then, subject to a ten (10) day right to cure following written notice of default from the Department, the Department shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law as to any and all of its claims without further order of the Court. The rights of the Department to setoff under 11 U.S.C. § 553 shall not be altered by the Plan or the confirmation order entered in this matter and are expressly reserved. The claim of the North Carolina Department of Revenue is subject to adjustment on account of federal corrections, as required by N.C. Gen. Stat. § 105-130.20 (for corporations, LLCs and other entities) and N.C. Gen. Stat. § 105-159 (for individuals). Notwithstanding any other provisions of the Plan and the Confirmation Order, the Department shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date, except to the extent expressly stated in the Plan below.

**Unsecured general tax claims,** if any, will be treated as provided below in the section relating to "General Unsecured Claims."

### D.  Class 4 – Branch Banking and Trust Co now Truist ("Truist")

(1)  Description.   On or about June 23, 2017, The Debtor executed a Retail Installment Sale Contract whereby the Debtor granted a purchase money security interest in a 2016 Chevrolet Silverado bearing vehicle identification number 1GC1CUEG4GF225392. Further, the Debtor agreed to make seventy-two (72) monthly installment payments of $576.46 beginning August 07, 2017. On May 11, 2020, Truist filed Claim Number 2 alleging to be owed $21,776.69 on this obligation.

(2)  Impairment.   This Class will be impaired.

(3)  Treatment.   On July 8, 2020, Truist filed a Motion for Relief From Stay with Consent of the Debtor [Doc. No. 47]. Truist shall take possession of its collateral immediately

upon the entry of an order lifting the automatic stay and shall have thirty (30) days after the Effective Date to file a deficiency claim, which shall be treated in Class 6 as a general unsecured claim.  After the Effective Date, the Debtor shall have no obligation to insure, maintain, or repair the collateral.

**E.    Class 5 – Nissan Motor Acceptance ("Nissan")**

(1)    Description.    On or about July 27, 2015, The Debtor executed a Simple Interest Retail Installment Sale Contract with Arbitration Clause whereby the Debtor granted a purchase money security interest in a 2015 Nissan NV bearing vehicle identification number 3N6CM0KN1FK717029.  Further, the Debtor agreed to make sixty (60) monthly installment payments of $393.66 beginning September 10, 2015.  On June 19, 2020, Nissan filed Claim Number 7 alleging to be owed $2,386.13 on this obligation.

(2)    Impairment.    This Class will be impaired.

(3)    Treatment.    The Debtor shall liquidate the collateral pursuant to the terms Article IV. Liquidation.

**F.    Class 6 – General Unsecured Creditors' Claims:**

(1)    Description.    This Class consists of all allowed, undisputed, non-contingent unsecured Claims in the Debtor's Petition or as otherwise approved by the Court.

(2)    Impairment.    This Class will be impaired.

(3)    Treatment.    The approximate total of general unsecured claims based on claims filed or scheduled as of the date of the filing of this Plan is $258,351.71. The Debtor proposes to pay each allowed, undisputed, non-contingent claim in this class a single lump sum payment from the net proceeds generated from the liquidation of the Debtor's assets as outlined in the Liquidation section below and after payment of all senior Claims.  It is anticipated that such payment will be made within one hundred and eighty (180) days of the Effective Date.

Prior to filing the Debtor entered into two (2) Merchant Cash Advance Agreements with QuarterSpot, Inc. and Kabbage, Inc. for working capital.  Based on the loan documents in the Debtor's possession it is unclear as to whether either of these creditors have a properly perfected lien on Debtor's accounts receivable.  Out of an abundance of caution, the Debtor filed a Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. § 363 and obtained Court approval for the use of the same.  Since the filing of the case, QuarterSpot, Inc. has filed Claim No.: 4 as an unsecured claim.  Kabbage, Inc. has not filed a claim or made an appearance in the case.  The Debtor intends to treat the claim of Kabbage, Inc. as unsecured unless it files a claim showing it to be secured.  In that case and if the Debtor does not object to the filed claim, Kabbage will be secured up to the value of the accounts receivable as of the date of the filing of the Petition.

As noted in Article I, Hoffman & Hoffman, Inc. claims certain liens on funds currently held by several general contractors.  To the extent the Court affirms the validity of such liens on

9

funds, that portion of Hoffman & Hoffman, Inc.'s claim will be treated as secured by those funds as ordered by the Court in future orders. To the extent the Court does not find any or all of such liens to be valid, or to the extent funds are not available to pay a Court ordered lien on funds the claim or that portion of the claim of Hoffman & Hoffman shall be treated as unsecured.

**G.**     **Class 7 – Executory Contracts and Unexpired Leases**

(1)     Description.     On the Petition Date, the Debtor was a party to the following executory contracts and unexpired leases:

| Party | Type of Agreement |
|-------|-------------------|
| Davie Construction Co. | HVAC subcontract agreement |
| Gates Management | Storage Unit |
| Mobile Mini Solutions | Rental of 20 ft. standard tri cam container |

(2)     Impairment.     This Class will be impaired.

(3)     Treatment.     Pursuant to 11 U.S.C. § 365, the Debtor hereby assumes the executory contract with Davie Construction Co. to the extent services by the Debtor are not complete. Pursuant to 11 U.S.C. § 365, the Debtor hereby rejects the executory contracts and unexpired leases with Gates Management and Mobile Mini Solutions. Any person with a claim arising from the rejection of a lease where the Debtor is a party shall be deemed to hold a general unsecured claim and shall file a proof of claim within thirty (30) days of the Effective Date or be forever barred from asserting any claim relating to such objection.

**H.**     **Class 8 - Equity Security Holders:**

(1)     Classification. This class consists of the shareholders of the Debtor. The sole shareholder and owner of the Debtor is Jarrod Penland.

(2)     Impairment.     This class will be unimpaired.

(3)     Treatment.     The equity security holder shall retain his ownership interest upon confirmation of the Plan.

## IV.  LIQUIDATION

The Debtor proposes the liquidation of all of its personal property listed on **Exhibit A** via its ordinary course of business and private sales as appropriate. The Debtor shall also bill out and collect all outstanding accounts receivable listed on **Exhibit A.** See also **Exhibit B** outlining the amounts of each class of claims. The net proceeds of the sale of the Debtor's personal property and the accounts receivable collected by the Debtor will be distributed in accordance with the priorities of the Bankruptcy Code and order of the Court. A hypothetical liquidation analysis is attached as **Exhibit C**. The Debtor shall complete the sale of its personal property within ninety (90) days of the Effective Date. Any personal property not sold within ninety (90) days of the Effective Date will be offered at public auction, to the extent an auctioneer deems the same to be

feasible.  If necessary to have a public auction, then the public auction will take place within one hundred and fifty (150) days of the Effective Date.

The sale of the Debtor's personal property shall be made free and clear of all liens, encumbrances, rights, interests, and claims of record pursuant to the provisions of 11 U.S.C. § 363(f). More specifically, the sale of the Debtor's assets shall be made free and clear of any and all liens, encumbrances, claims, rights and other interests, including but not limited to the following:

      a.      Any and all property taxes due and owing to any city, county, or municipal corporation; and

      b.      Any and all remaining interests, liens, encumbrances, rights and claims asserted against the Debtor's assets, which relate to or arise as a result of a sale of the assets, or which may be asserted against a buyer of the assets including, but not limited to, liens, encumbrances, interests, right and claims, whether fixed and liquidated or contingent and unliquidated, that have or may be asserted against the Debtor's assets or the buyer of the Debtor's assets by the North Carolina Department of Revenue, the Internal Revenue Service, the North Carolina Employment Security Commission, and any and all other taxing and government authorities.

If following a Motion for Distribution, any liens, as described above, exist, then they shall attach to the proceeds of the sale, if any, subject to the relative priorities of and in accordance with the Bankruptcy Code and orders of the Court.

## V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as otherwise specified in this Plan, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor.  The Debtor hereby rejects all leases in which the Debtor is the Lessor and all shareholder agreements and operating agreements related to entities owned by the Debtor, if any.

Any person or entity with a Claim arising from such rejection shall be deemed to hold a general unsecured claim and shall file a proof of claim within thirty (30) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection.

## VI.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

      A.      The Debtor proposes to liquidate its assets to make payments to creditors.

With respect to each claim described above in Article III, except as otherwise expressly provided in Article III, the Debtor shall keep the collateral pledged pursuant to the terms of the/each security instrument (i.e., the deed of trust, mortgage, security agreement or other applicable security instrument) (herein called the "Security Instrument," whether one or more) which secures the debt.  If the Debtor fails to make a payment as provided herein within thirty (30) days after its due date or fails to keep the collateral insured as provided herein within thirty (30) days after written notice from the secured creditor of such failure, the secured creditor may declare the debt in default, give notice thereof to the Debtor, and exercise its remedies against the collateral that secures the debt.  The provisions of the Security Instrument that allow the secured creditor to foreclose on the collateral in the event of a default and all other provisions of the Security Instrument that relate to the collateral shall remain in effect.  Any financial covenants or other covenants in any of the loan documents relating to the debt, including but not limited to the Security Instrument, that do not relate to the preservation, protection, repossession or foreclosure of the collateral shall not be effective post-confirmation.

B.      Sale Free and Clear of Liens.  Any real and personal property owned by the Debtor that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations.  In order to expedite the sale process, provide clear title to the properties sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to purchasers, simultaneous with the entry of the Order Confirming Plan, the Court will enter a free and clear order, which shall provide that all sales will be free and clear of all liens, interests, and other claims or interests.  All real or personal property sold by the Debtor shall be sold pursuant to the free and clear order to be entered.  No further motions related to the sales of property shall be required; provided however, the Debtor may file such motions and seek such orders to the extent needed to provide reasonable comfort or accommodation to the purchaser(s) or to specify the method of distribution of the sales proceeds.

C.      Distribution of Sales Proceeds.  Upon the sale of any real or personal property proposed to be sold by this Plan, the liens secured by such property shall attach to the net proceeds of sale remaining after payment of costs of sale and all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions, and any other costs permitted under Section 506(c) of the Code), and shall be paid to lienholders in accordance with the priorities of such liens, and then to other creditors in accordance with the priorities of the Code.  In the event the net proceeds of sale are insufficient to satisfy all claims within a class, such proceeds to be distributed to such class will be distributed pro rata.  The Debtor may elect to file additional motions with the Court setting forth the proposed distribution of any excess sales proceeds prior to distribution to creditors.

D.      Preservation of Right to Credit Bid.  All secured creditors shall retain the rights granted to them under § 363(k) to purchase their collateral via a credit bid upon the same or better terms of the proposed purchaser. In the event of a private sale which shall not satisfy the claim of the secured creditor(s) in full, the Debtor shall provide the secured creditor with a copy of the purchase contract in the manner designated by such creditor and such creditor shall have until no later than one hour before the Debtor's deadline for accepting such contract to inform the Debtor in writing whether it wishes to purchase the property via a credit bid upon the same or better terms than that offered by the purchaser. In the event the creditor does not provide written notification

12

to the Debtor that it will purchase the property by credit bid, the creditor shall be deemed to waive its right to credit bid. Each secured creditor shall be responsible for providing the Debtor with information concerning the method by which it wishes to be notified to potential purchase contracts for purposes of credit bidding (i.e. fax, electronic mail, or telephonic notification).

E.    <u>Deficiency Claims</u>.  Each secured creditor who receives the collateral securing their obligation shall have thirty (30) days after the Effective Date to file a proof of claim for any deficiency or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full.  Such proof of claim shall include an itemization of the principal, interest, and other costs.  Any such deficiency claim shall be treated in the general unsecured creditor class (Class 6).  In the event the Debtor obtains its Final Decree prior to the determination of any deficiency claim, such secured creditor shall inform the Disbursing Agent of such deficiency claim within the same time period.  In such event, a proof of claim shall not be required, but the secured creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the same information.

F.    <u>De Minimis Distributions</u>.  No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim. Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

G.    <u>Unclaimed Property</u>.  If any distribution remains unclaimed for a period of sixty (60) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.  If a distribution check is not negotiated by the creditor within 90 days of the date of the check, or the distribution check is not deliverable to the creditor by way of First Class U.S. Mail, addressed to the address listed in the Creditor's Proof of Claim or on the Petition, the Debtor will be entitled to void said check and retain said funds to be used in the Debtor's discretion.  Any Creditor whose funds are once not negotiated or are returned as described above shall not be part of any subsequent distribution.

H.    <u>Preservation of Avoided Transactions for the Benefit of the Estate</u>.  All transactions avoided or otherwise set aside pursuant to Sections 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to Section 551 and applicable case law.  Funds received from such transactions shall be distributed to creditors according to the priorities of the Code.  In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property.  However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be paid to the Disbursing Agent for distribution to creditors.

I.    <u>Timing of Distributions</u>. Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court.   Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.  Any distribution

required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.  The Debtor reserves the right to pay any Claim on an earlier or expedited schedule.

J.     All payments or distributions made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied first to outstanding interest and then to principal.  In the event that a creditor claims that it is entitled to costs and/or attorneys' fees, such creditor must file a fee application with the Court and such costs and attorneys' fees must be approved by the Court prior to such costs and attorneys' fees becoming part of the creditor's allowed claim.

K.     The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

L.     Revocation of Plan.  The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order.  If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of the Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

M.     The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

N.     Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorneys' fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

O.     Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the FEDERAL RULES OF BANKRUPTCY PROCEDURE, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan. Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

P.      Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

Q.      All objections to claims, fee applications, and adversary proceedings will be filed with the Court within sixty (60) days after the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

R.      Claims Paid by Third Parties.  To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not the Debtor, such creditor shall, within two (2) weeks therefore, inform the Debtor of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under the Plan.

S.      Exemption from Transfer Taxes.  Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.  Each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of the Plan.

T.      Procedure for Payment of Professional Fees.  Current Court approved professionals shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

U.      Escrow Arrangements.      Unless otherwise stated in individual creditor treatments herein, the Debtor will no longer make any escrow payments for taxes, insurance, or any other expenses generally paid through escrowed funds.  The Debtor will pay such expenses directly from and after the Effective Date.  Escrowed funds held by a creditor shall be turned over to the Debtor on the Effective Date.

## VII.  PRESERVATION OF SECTION 506(c) CLAIMS

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Debtor shall have the right to seek recovery of the cost of maintaining and preserving any collateral or property.

## VIII.  PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

Notwithstanding anything to the contrary in the Plan, the provisions of the Plan or Order Confirming Plan shall not have and are not intended to have, any res judicata or collateral estoppel effect with respect to any causes of action that the Debtor may assert, regardless of whether and to

what extent such causes of action are specifically described in the Plan.  Unless any causes of action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such causes of action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply so such causes of action upon or after confirmation of the Plan.  Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Order Confirming Plan, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date.  This shall include, but is not limited to all pre-petition claims and any and all post-petition claims that he could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, 550, and 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

## IX. SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, may be modified throughout the course of payment under this Plan.  The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## X.  PROVISIONS GOVERNING DISTRIBUTIONS

A.    Delivery of Distributions in General.  Distributions to holders of allowed claims shall be made:  (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or  (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B.    Distribution Dates.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

C.    Cure Period.   The failure by the Debtor to timely perform any term, provision or covenant contained in this Plan shall not constitute an Event of Default unless and until the Debtor has been given thirty (30) days written notice of the alleged default and provided an opportunity to cure.  Until the expiration of the thirty (30) day cure period, the Debtor shall not be deemed to be in default, and any performance or actions taken during such thirty (30) day cure period shall be considered timely for all purposes.  Such written notice pursuant to the Plan provisions and the

passage of the thirty (30) day cure period shall constitute conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.

## X. ACCEPTANCE OR REJECTION OF PLAN;
## EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.    <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.    <u>Acceptance by a Class of Creditors</u>.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.    <u>Claimants Entitled to Vote</u>.  Holders of impaired Claims shall be entitled to vote if:

(1)    Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules; or

(2)    Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018.

If an impaired Claim has been filed in an undetermined amount, in which case the creditor holding such claim shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

Any creditor holding two or more duplicate claims shall be entitled to vote only one claim.

D.    <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.    <u>Acceptances Necessary to Confirm the Plan</u>.  At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court

17

must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.    <u>Confirmation of Plan Without Necessary Acceptances</u>.    The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.    In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.    In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan entitled "Cramdown," for confirmation pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code.    In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1129(b)(2)(A).

## XI.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds (2/3) in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.    The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XII.  EFFECT OF CONFIRMATION

A.    Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

B.    **INJUNCTION**.  **As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtors or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims that the Debtor may have against any party in interest.  This injunction shall not affect any creditor's ability to enforce rights against non-Debtors and non-Debtor property.**

**The confirmation of the Plan shall operate to enjoin any action against a guarantor or co-obligor of any claim settled or satisfied under the terms of the Plan during the term of the Plan.**

C.      Confirmation of the Plan shall satisfy all Claims or Causes of action arising out of any Claim settled under the terms of the Plan.

D.      <u>Waiver and Release</u>. Confirmation shall constitute waiver and release of the right to pursue litigation and causes of action against the Debtor, which release is supported by the requirements of this Plan and covenants contained herein.

E.      <u>Binding Effect</u>. Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or interests including any Interest of such holder is impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.

F.      <u>Discharge of Claims</u>. Except as provided in the Plan, the rights afforded in and the payments and distributions to be made under the Plan shall discharge all existing debts and Claims of any kind, nature or description whatsoever against or in the Debtor or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.

## XIV.  RELEASE OF TITLE TO PROPERTY

A.      <u>Vehicles</u>.  Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of this estate in bankruptcy for which the certificate of title is in the possession of the secured party, the secured party shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to the Debtor.  Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with the provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this Plan.  Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case. The Debtor specifically reserve the right to file a motion to reopen this case under Section 350 of Title 11 of the United States Code to pursue the rights and claims provided for herein.

B.      <u>Real Property</u>.  Pursuant to N.C. Gen. Stat. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtor.  The failure of any such party to comply with

19

this section shall result in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by Section 45-36.9(c) of the N.C. General Statutes.  Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with this provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan.  Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case.  The Debtor specifically reserves the right to file a motion to reopen this case under Section 350(b) of Title 11 of the United States Code to pursue the rights and claims provided for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XV.  APPLICATION OF PLAN PAYMENTS

A.    All payments made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor.  In the event that a creditor is entitled to costs and/or attorneys fees post-petition under Section 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys fees becoming part of the creditor's allowed claim.  Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

B.    Confirmation of the Plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. § 524(i).

## XVI.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1.    to determine any and all objections to the allowance of claims and/or interests;

2.    to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3.    to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4.      to determine all controversies and disputes arising under or in connection with the Plan;

5.      to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6.      to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7.      to determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

8.      to determine all disputes regarding property of the Estate;

9.      to establish and adjust procedures for the orderly administration of the Estate;

10.     to determine matters that are subject to proceedings duly removed to the Bankruptcy Court;

11.     to replace the Debtor-in-Possession with a Trustee for good cause shown;

12.     to determine and resolve questions concerning the existence of defaults under the Plan;

13.     to modify the Plan pursuant to 11 U.S.C. § 1127(b);

14.     to correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purposes and intent of the Plan; and

15.     to issue any order necessary to carry out the Plan.

## XVII.  MISCELLANEOUS PROVISIONS

A.      <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.      <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

C.      <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D.    <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E.    <u>Liens</u>.  Except as otherwise expressly set forth herein, all liens remaining in favor of any creditor in this action against the real property that arose prior to the filing of the petition shall be deemed to be released upon confirmation of the Plan.  The Debtor shall request and all parties shall provide such additional documentation as may be necessary to effectuate these releases.

F.    <u>Credit Reporting</u>.    Each Creditor who regularly makes reports to credit reporting bureaus shall ensure that their reports accurately reflect that the Debtor has filed bankruptcy and included all obligations owed to that Creditor in their Plan.  Further, all Creditors who make post-petition reports to credit reporting bureaus shall ensure that their reports accurately reflect the terms of all orders, including but not limited to cash collateral and orders confirming the Debtor's Plan.  Failure to make accurate reports to credit bureaus shall constitute a violation of automatic stay provisions of 11 U.S.C. § 362, if made post-petition but pre-confirmation.  Alternatively, if erroneous reports are made post-confirmation, then those reports shall be treated as violations of the Order Confirming Plan after notice and a hearing on the alleged violations.  The Debtor shall be exempted from the Fair Credit Reporting Act in pursuing a remedy against a Creditor for erroneous credit reporting and the Bankruptcy Court shall retain jurisdiction to hear such matters.

G.    <u>Adversary Proceedings.</u>  The Debtor reserves the right to begin or continue any adversary proceedings permitted under Title 11, United States Code, and the applicable Bankruptcy Rules.

H.    <u>Modification of Plan</u>.  The Debtor may submit modifications of the Plan to the Court at any time prior to confirmation pursuant to § 1127.

I.    <u>Default Remedies</u>.    Any creditor may serve notice of a default on the Debtor and Debtor's counsel.  Such notices shall be in writing and delivered by registered mail to the Debtor.  The Debtor shall have thirty (30) days to cure the default.  If the default is not cured, any creditor may take such action as the Code permits.  This provision shall be cumulative with other rights and remedies provided to parties in interest under the Bankruptcy Code.

J.    <u>Granting of Liens</u>.    If an existing lien on any property of the Debtor contains language providing that the granting of a lien on that property shall be deemed an event of default, the granting of a lien in accordance with this Plan shall not be deemed an event of default.

K.    <u>Cancellation of Liens</u>.  Except as otherwise provided specifically in this Plan, any and all prepetition liens encumbering any of the Debtor's assets, whether deeds of trust, UCC-1 financing statements, or otherwise, shall be deemed canceled of record upon the entry of the

Confirmation Order.  The Debtor shall be entitled to present this Plan, and the Confirmation Order to any public official charged with the maintenance of records regarding liens, and direct said official to cancel said liens of record.

Respectfully submitted, this the 30th day of July, 2020.

The Law Offices of Oliver & Cheek, PLLC

By: s/Clayton W. Cheek
Clayton W. Cheek
N.C. State Bar No. 30590
Email: clayton@olivercheek.com
Ciara L. Rogers
N.C. State Bar No. 42571
Email: ciara@olivercheek.com
Linda B. Green
N.C. State Bar No. 54265
Email: linda@olivercheek.com
Post Office Box 1584
New Bern, North Carolina 28563
Telephone: (919) 987-2024
Facsimile: (252) 633-1950
*Attorneys for Debtor*

Penland Heating & Air Conditioning, Inc.

s/Jarrod Penland
Jarrod Penland, President

**Penland Heating and Air Conditioning, Inc. - 20-01795-5-DMW**
**Exhibit A Assets**

**ASSETS**

| <u>Real Property</u> | | <u>VALUE</u> |
|---|---|---|
| None | $ | - |
| **Total Real Property:** | **$** | **-** |

| <u>Personal Property</u> | | |
|---|---|---|
| Debtor in possession bank account, balance of 7/27/2020 | $ | 25.00 |
| Accounts receivable | $ | 81,000.00 |
| 2015 Nissan NV200 VIN 3N6CM0KN1FK717029 | $ | 4,000.00 |
| 2001 Kaufman B Trailer VIN 15XFB18281L001986 | $ | 500.00 |
| 2008 Pace Trailer VIN 4FPFB12118G131810 | $ | 1,000.00 |
| Tools - hammer drill, diamond core bits, drills | $ | 2,150.00 |
| **Total Personal Property:** | **$** | **88,675.00** |
| **Total Real and Personal Property:** | **$** | **88,675.00** |

**Penland Heating and Air Conditioning, Inc. - 20-01795-5-DMW**
**Exhibit B Liabilites**

|  | Claim # | | Claim Amount |
|---|---|---|---|
| **Class 1:  Administrative** | | | |
| The Law Offices of Oliver & Cheek, PLLC | | | To be determined by the Court |
| Williams Overman Pierce, LLP | | | To be determined by the Court |
| | | | |
| **Class 2:  Ad Valorem Taxes** | | | |
| Carteret Co. Tax Collector | | $ | - |
| Orange Co. Tax Collector | 1 | $ | 171.48 |
| | **Total:** | $ | 171.48 |
| | | | |
| **Class 3:  Tax Claims** | | | |
| Internal Revenue Service | 6 | $ | 93,815.49 |
| North Carolina Department of Revenue | 9 | $ | 978.58 |
| | **Total:** | $ | 94,794.07 |
| | | | |
| **Class 4: Branch Banking and Trust Co. now Truist** | 2 | $ | 21,776.69 |
| | | | |
| **Class 5: Nissan Motor Acceptance** | 7 | $ | 2,386.13 |
| | | | |
| **Class 6: General Unsecured Creditors** | | | |
| Bank of America | | $ | 2,462.66 |
| Bull City Sheet Metal | | $ | 5,643.75 |
| Capital One Bank (USA), N.A. - acct ending in 5849 | 3 | $ | 23,486.15 |
| Capital One Bank (USA), N.A. - acct ending in 7543 | 5 | $ | 1,200.94 |
| Carrier Enterprise | | $ | 3,919.93 |
| Custom Sheet Metal | | $ | 27,486.15 |
| Ferguson HVAC | | $ | 3,316.51 |
| Hoffman and Hoffman | | $ | 18,335.51 |
| Internal Revenue Service | 6 | $ | 5,296.95 |
| JPMorgan Chase Bank, N.A. | 8 | $ | 10,892.51 |

| | | | |
|---|---|---|---|
| Kabbage | | $ | 44,231.96 |
| North Carolina Dept of Revenue | 9 | $ | 411.16 |
| Orange Co. Tax Collector | 1 | $ | 28.27 |
| QuarterSpot, Inc. | 4 | $ | 99,626.59 |
| Sheetz | | $ | 1,392.27 |
| Shell Small Business | | $ | 6,153.60 |
| Synchrony Bank c/o PRA Receivables Management, LLC - Lowes Card | | $ | 4,466.80 |
| **Total:** | | **$** | **258,351.71** |

**Class 7: Executory Contracts and Unexpired Leases**
Davie Construction Co. - HVAC subcontract agreement
Gates Management - storage unit
Mobile Mini Solutions - 20' standard tri cam container

**Class 8: Equity Security Holders**
Jarrod Penland

**Penland Heating and Air Conditioning, Inc. - Case No. 20-01795-5-DMW**
**Exhibit C- Liquidation Analysis Unsecured Creditors**

| ASSETS | LIENHOLDER | AMOUNT OF LIEN | LIQUIDATION VALUE | EQUITY |
|---|---|---|---|---|
| **Personal Property:** | | | | |
| Debtor in possession bank account, balance of 7/27/2020 | | | $ 25.00 | $ 25.00 |
| Accounts receivable - less than 90 days old | Hoffman & Hoffman, Inc.** | $ 13,103.89 | $ 81,000.00 | $ 67,896.11 |
| Office furniture | | $ - | $ 500.00 | $ 500.00 |
| 2004 Chevrolet Silverado VIN 1GCEC14XX4Z138110 | | $ - | $ 800.00 | $ 800.00 |
| 2015 Nissan NV200 VIN 3N6CM0KN1FK717029 | Nissan Motor Acceptance | $ 2,386.13 | $ 4,000.00 | $ 1,613.87 |
| 2016 Chevrolet Silverado 2500 Crew Cab VIN 1GC1UEG4GF225392 | BB&T now Truist | $ 21,776.69 | $ 16,780.00 | $ - |
| 2001 Kaufman B Trailer VIN 15XFB18281L001986 | | $ - | $ 500.00 | $ - |
| 2008 Pace Trailer VIN 4FPFB12118G131810 | | $ - | $ 1,000.00 | $ 1,000.00 |
| Tools - hammer drill, diamond core bits, drills | | $ - | $ 2,150.00 | $ 2,150.00 |
| Total personal property: | | | $ 106,755.00 | |
| Total personal property to be auctioned or sold: | | | $ 89,950.00 | |

**Less**

Chapter 7 Auctioner Fees Real Property

| | | | | |
|---|---|---|---|---|
| 10% of first $25,000.00 | | | | $ - |
| 4% of balance | | | | $ - |

Chapter 7 Auctioner Fees - Personal Prop.

| | | | | |
|---|---|---|---|---|
| 20% of first $20,000 | | | | $ (4,000.00) |
| 10% of next $50,000 | | | | $ (6,995.00) |
| 4% of Balance | | | | $ - |

Trustee's Commission

| | | | | |
|---|---|---|---|---|
| 25% of first $5,000 | | | | $ (1,250.00) |
| 10% of next $5,000 to $50,000 | | | | $ (8,495.00) |
| 5% of the next $50,000 to $1,000,000.00 | | | | $ - |
| 3% of the balance | | | | $ - |

| | | | | |
|---|---|---|---|---|
| Chapter 11 Administrative Claims (est.) | | | | $ (25,000.00) |
| Priority Claims | | | | $ (94,793.87) |
| Available for General Unsecured Creditors | | | | $ - |

** Lien is subject to Court approval